******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AURORA LOAN SERVICES, LLC *v.* HARRY
HIRSCH ET AL.
(AC 37828)

Beach, Keller and Norcott, Js.*

*Argued September 20, 2016—officially released January 31, 2017*

(Appeal from Superior Court, judicial district of Waterbury, Complex Litigation Docket, Dooley, J.)

*Peter A. Ventre*, with whom, on the brief, was *Kimball Haines Hunt*, for the appellant (substitute plaintiff).

*Michael D. O'Connell*, with whom, on the brief, was *Erin Arcesi Mutty*, for the appellee (defendant Connecticut Attorneys Title Insurance Company).

*Opinion*

BEACH, J. The substitute plaintiff, Nationstar Mortgage, LLC,[1] appeals from the judgment of the trial court rendered, in part, in favor of the defendant, Connecticut Attorneys Title Insurance Company.[2] The plaintiff claims that the court erred in: (1) its calculation of damages; (2) declining to award attorney's fees; and (3) calculating prejudgment interest pursuant to General Statutes § 37-3a from the return date on the summons.[3] We disagree and affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant. Harry Hirsch, a Connecticut attorney and an approved title agent for the defendant, was authorized to issue title insurance policies and letters of protection on behalf of the defendant. John Eoanou was a real estate developer and a client of Hirsch since 1999. In approximately 1998, Eoanou began the process of acquiring and developing a tract of land in Groton that was approved for resubdivision and development by Mardie Lane Homes, LLC (Mardie), a company owned by Eoanou. As part of the subdivision approval, Mardie was required to build a road and other infrastructure and "to obtain a bond in the event of its failure to do so." Mardie obtained construction loans from Liberty Savings Bank for which a mortgage was given on two lots within the subdivision, lots 14 and 19. Mardie did not build the necessary infrastructure and defaulted on its construction loans; subsequently, subdivision approval expired in 2003. Liberty Savings Bank took title to lots 14 and 19.

In 2004, Eoanou filed a bankruptcy petition in federal court. While in bankruptcy, Eoanou, with Hirsch's knowledge and assistance, formed a new company, Thames River, LLC, that listed Eoanou's son as the sole member and manager, but in reality Eoanou was the controlling entity. Thames River, LLC, continued development of the Groton property. At Eoanou's direction, Hirsch purchased lots 14 and 19 from Liberty Savings Bank, and took title to the properties as trustee. The town of Groton issued building permits to Eoanou for lots 14 and 19, despite the expiration of the subdivision approval. Eoanou converted each lot into a condominium containing two units each. Lot 14 became 52A and 52B Mardie Lane and lot 19 became 47A and 47B Mardie Lane.

Before the condominiums or the road were completed, and before any certificates of occupancy were issued, Eoanou arranged for the sale of 47B and 52B. The transaction was not an arm's length transaction. Xenia Kamberos, who lived in Chicago and met Eoanou while on vacation in Aruba, agreed to invest in Eoanou's real estate projects in Westport and Preston because she liked and trusted him. When Kamberos decided to withdraw from the Westport investment, Eoanou, using

a power of attorney from Kamberos, subsequently arranged a sham sale of the Westport property. The power of attorney was prepared by Hirsch. Eoanou did not return any of Kamberos' investment upon selling the property for more than twice the amount which Kamberos had invested.

Without Kamberos' knowledge, Eoanou used the money that Kamberos had invested in the Westport project toward the purchase of 47B and 52B Mardie Lane. Eoanou informed Hirsch that Kamberos would be purchasing 47B and 52B Mardie Lane for $385,000 each. Kamberos did not fill out the loan applications that were submitted for financing the transaction; the applications falsely stated her income and address. Financing was obtained through Sterling Lending Group, with which Eoanou had a preexisting relationship.

The closings on 47B and 52B Mardie Lane occurred on April 24, 2007, and May 9, 2007, respectively. The closings were attended only by Hirsch and Eoanou, and at the closings, Hirsch purportedly represented Kamberos, the purchaser; Thames River, LLC, the seller; and First Magnus Financial Corporation (First Magnus),[4] the purchaser's lender. He also acted as the defendant's approved agent for the issuance of title insurance and letters of protection. Hirsch never spoke to Kamberos about the transactions and never sent the sales contracts to her. Eoanou signed Kamberos' name to the sales contracts, and Hirsch was aware of this fact. At the closing, Bryan Johnson purportedly acted pursuant to Kamberos' power of attorney. Kamberos did not sign any power of attorney nor was Johnson present at the closing; rather, Johnson's signature was forged and the document purporting to give him power of attorney also was forged. Hirsch knew that the attestation purportedly made on behalf of Kamberos was false.

Prior to the closings, First Magnus sent Hirsch documents to be completed in accordance with certain instructions. One such document was the "Owner Occupancy Agreement," which required that the borrower represent that the property would be used as the borrower's principal residence within sixty days after recordation of the security instrument. At the time of the closing, work on both properties was incomplete and both lacked certificates of occupancy. Hirsch had no information as to whether certificates of occupancy would be issued within sixty days. Hirsch knew that Kamberos lived in Chicago and had no intention to move to Connecticut. Hirsch nonetheless submitted the owner occupancy agreement to First Magnus.

Another document essential to the closing was an "Address Certification" which required Hirsch to certify the correct mailing address of the mortgagor. Hirsch falsely certified Kamberos' mailing address, an address that was actually an uninhabited lot in Westport next

to Eoanou's home. Hirsch also sent the HUD-1 forms to First Magnus, knowing that the documents bore the signature of Johnson as attorney in fact for Kamberos, despite the fact that Johnson did not sign the forms. In connection with the closing, Hirsh, on behalf of the defendant, issued identical title insurance policies in favor of First Magnus and the purchaser relating to 47B and 52B Mardie Lane. The policies provided in relevant part that the defendant provided coverage against loss or damage sustained by an insured, by reason of, inter alia, unmarketability of title and lack of right of access to and from the land. At the closing, Hirsch also issued letters of protection on behalf of the defendant as to both properties. The letters provided that the defendant would reimburse "for actual loss" incurred in connection with such closing when conducted by an issuing agent or approved attorney "when such loss arises out of: 1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to . . . the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien . . . or 2. Fraud or dishonesty of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings." When Eoanou stopped making mortgage payments, the loans went into default and the properties were foreclosed upon. Aurora, the plaintiff's predecessor in interest; see footnote 1 of this opinion; took title to the properties by strict foreclosure.

In August, 2013, the plaintiff filed a consolidated amended complaint against the defendant only,[5] relating to the sale of 47B and 52B Mardie Lane.[6] Counts one and three allege that the titles to both properties were unmarketable and therefore the title insurance policies provide coverage for its losses. In counts two and four, the plaintiff sought contractual indemnification under the letters of protection and claimed that the defendant, through its agent Hirsch, (1) failed to comply with the lender's written closing instructions, and (2) acted fraudulently and dishonestly in handling the lender's funds or documents in connection with the closing.

In its memorandum of decision, the court found in favor of the defendant as to the title insurance policy claims, concluding that title was marketable. The court found in favor of the plaintiff as to counts two and four. The court found that First Magnus' lien was valid and title was marketable; therefore, the plaintiff could not prevail under the first clause at issue in the letters of protection because the misconduct upon which the plaintiff relied did not relate to the status of the title or the validity, enforceability or priority of the lien. As to counts two and four, the court found in favor of the

plaintiff under the "fraud or dishonesty" clause in the letters of protection because "several of First Magnus' closing documents contained false representations or were known forgeries," such as the false representation regarding owner occupancy, the false certifications of Kamberos' mailing address and the fact that Johnson did not sign as Kamberos' attorney on the HUD-1 forms.

The court awarded damages on counts two and four in the total amount of $426,362.98 and prejudgment interest in the amount of $61,361.23. The court declined to award attorney's fees. This appeal followed.

I

The plaintiff claims that the court erred in the amount of its award of damages. We disagree.

"Our standard of review of an award of damages . . . is well settled. [T]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Internal quotation marks omitted.) *Lyons* v. *Nichols*, 63 Conn. App. 761, 767, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001).

The court found in favor of the plaintiff on counts two and four due to Hirsch's breach of the letters of protection as to the two properties. The plaintiff sought damages in the amount of the debt, the cost of the foreclosure actions, loan servicer carrying costs for the properties, prejudgment interest and attorney's fees. The court awarded some but not all of the damages sought. As to 47B Mardie Lane, the court stated the following: "[T]he loan amount was $308,000. At the time of the foreclosure, the outstanding debt was $333,482.59 and the value of the property was $151,000, resulting in a negative equity of $182,482.59. The foreclosure court recognized costs, to include attorney's fees, totaling $1,625, which will be awarded. Prior to the sale of 47B Mardie Lane, the plaintiff incurred various carrying costs, i.e., taxes and maintenance. The court does not award these postforeclosure costs." The court noted that "[e]ventually, 47B [Mardie Lane] was sold for $11,500. The court uses market value at the time of foreclosure as the offset to the amount of the debt on the loans. This figure was supported by an appraisal and approved by the foreclosure court. This court has little to no information as to the circumstances which led to the sale several months later for such a drastically reduced price and so does not factor this number into the damages claim." The court awarded damages with respect to 47B Mardie Lane in the amount of $184,107.59.

Regarding 52B Mardie Lane, the court concluded that "the loan amount was $365,750. At the time of the foreclosure, the outstanding debt was $393,630.39 and the value of the property was $153,000, resulting in a negative equity of $240,630.39. The foreclosure court recog-

nized costs, to include attorneys' fees, in the amount of $1625 which will be awarded. 52B Mardie Lane remains unsold and the plaintiff continues to incur carrying costs. Damages awarded as to [52B Mardie Lane] are $242,255.39."

In calculating the damage award for 47B and 52B Mardie Lane, the court subtracted the fair market value of the property at the time of the foreclosure, as found by the foreclosure court, from the amount of outstanding debt at the time of foreclosure and added foreclosure costs to that total. The plaintiff claims that this amount was insufficient, as it was not equal to the amount of "actual losses" incurred as a result of Hirsch's fraud, in contradistinction to the letters of protection that provided that "actual losses" would be awarded in the event of fraud. It argues that there were no restrictions in the letters of protection as to what constituted "actual losses" that arose from dishonesty or fraud and that the court erred in reducing the damage award only by the amount of the appraised valuation of each property at the time of foreclosure, which was $151,000 and $153,000, respectively. The plaintiff also argues that the court erred by failing to award the costs incurred not only by having to foreclose on the properties but also by having to carry and to maintain the properties until sold. The plaintiff specifically argues that the court's footnote stating that it did not award postforeclosure costs because there was no testimony from the plaintiff's predecessor in interest as to the efforts made and costs incurred to secure, maintain or sell the properties improperly placed on the plaintiff the burden to prove the absence of an exception to otherwise awardable damages.

The plaintiff also argues that the court erred in using the fair market value of the properties found by the foreclosure court in its calculations of damages and that damages should have instead been measured according to the properties' values at the time of closing. It argues that the fair market value at the time of foreclosure was irrelevant because, due to Hirsch's fraudulent behavior, marketable title never was conveyed and the resulting mortgage transactions were void ab initio. In further support of its approach, the plaintiff notes that, although 52B and 47B Mardie Lane were valued at $153,000 and $151,000, respectively, at the time of foreclosure, the plaintiff sold 47B Mardie Lane for $11,500 and was unable to sell 52B Mardie Lane at all. The plaintiff argues that the values assigned by the foreclosure court had no realistic application in the calculation of damages because the evidence at trial demonstrated that there were serious problems with the properties, including no access to the road, no connection to a water source or sewage line, no occupancy permit, and code deficiencies. The plaintiff further contends that the court erred in failing to include its carrying costs in the damage award.

The court found in favor of the plaintiff under the provision in the letters of protection providing for the recovery of "actual losses" in the event of fraud or dishonesty by the defendant's agent, Hirsch. There is nothing further in this provision that prescribes the method of calculating the amount of actual loss. The plaintiff did not seek rescission of the contracts related to the closing. Rather, it sought damages for breach of the letters of protection issued in connection with the closing and the court awarded damages thereunder. The court did not have before it any question whether the loan and mortgage transactions were void ab initio. The court did find, however, that the titles to both properties were marketable and that title was transferrable after the closings.

The court explained that it used "the market value at the time of foreclosure as the offset to the amount of debt on the loans. This figure was supported by an appraisal and approved by the foreclosure court." The plaintiff introduced into evidence, as full exhibits, the judgments of strict foreclosure as to 52B and 47B Mardie Lane. In those judgments, the foreclosure court found that the fair market values of the properties were $153,000 and $151,000, respectively. The trial court did not abuse its discretion in giving weight to this evidence; *Statewide Grievance Committee* v. *Dixon*, 62 Conn. App. 507, 511, 772 A.2d 160 (2001) (weight to be given to evidence solely within determination of trier of fact); or in relying on it as credible evidence as to the market value.

The court did not err in declining to weigh heavily the $11,500 sale price of 47B Mardie Lane in its decision as to the amount of damages. The court explained that it had "little to no information" as to the "circumstances which led to the sale several months later for such a drastically reduced price" and thus did not use this number in its calculation of damages. "Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 441, 78 A.3d 76 (2013). The court did not abuse its discretion in concluding that the fair market value as of the foreclosure was proved with reasonable certainty, but that the circumstances of the later sale price of $11,500 were not.

The evidence submitted at trial by the plaintiff regarding the unfinished nature of the properties does not necessarily cause the values assigned during the foreclosure to have "no realistic application," as argued by the plaintiff. The court did not abuse its discretion in crediting the fair market value of the properties as found by the foreclosure court, rather than relying on the plaintiff's evidence as to the value and condition of the properties. Moreover, there is no evidence that the

appraisals upon which the foreclosure court relied failed to take the unfinished nature of the properties into account.[7]

The plaintiff also argues that the defendant should be precluded from benefiting from the court's use of the value of the properties as of the time of foreclosure in its calculation of damages because the defendant did not present evidence as to the actual value of the properties. The plaintiff, however, had the burden to prove damages, and the evidence as to the fair market value that the court found credible was introduced into evidence by the plaintiff.[8] The burden of proof properly remained with the plaintiff.

The court did not include postforeclosure carrying costs, such as maintenance and taxes, in its award of damages. The plaintiff argues that this omission was erroneous because such costs are recoverable. The court's reasoning for not awarding such costs was as follows: "[w]hether to sell or maintain the properties, the mechanism for maintenance, and other decisions regarding these properties were, in the first instance, decisions made by Aurora, the predecessor loan servicer. While the court received many of Aurora's records, it did not hear testimony from Aurora as to the efforts made to secure, maintain, sell or liquidate these properties. [The plaintiff] did not become the servicer on these loans until 2012 and had no competent evidence as to these efforts, decisions or circumstances. The court can envision a myriad [of] reasons, from mismanagement to a flailing real estate market, that these costs may have been incurred. [The plaintiff has] failed to prove the defendant's liability for these costs other than as a 'but for' result of Hirsch's misconduct. This is not sufficient." The court was not required to accept the conclusions advanced by the plaintiff, who had the burden of proof as to damages, and did not abuse its discretion in declining to award postforeclosure carrying costs.

In sum, the method used by the court to calculate "actual losses" under the letters of protection was based on the evidence before it. The court did not abuse its discretion in calculating the damage award.

II

The plaintiff next claims that the court erred in declining to award attorney's fees. We disagree.

The decision whether to award attorney's fees is reviewed under an abuse of discretion standard. See, e.g., *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 777, 717 A.2d 150 (1998).

In declining to award attorney's fees, the court reasoned that under the American rule,[9] the plaintiff ordinarily cannot recover attorney's fees for breach of contract in the absence of an express provision allowing recovery, and there is no contractual provision in the

letters of protection providing for the recovery of attorney's fees. The court rejected the plaintiff's claim for punitive damages in the form of attorney's fees due to the wanton, reckless and/or fraudulent behavior of the defendant's agent, Hirsch. The court reasoned that, "Here, the contract provision found to have been breached was a contractual commitment not to be dishonest or commit fraud in the handling of the lender's documents. The contract itself contemplates that any breach of the provision would necessarily be by way of tortious conduct. Allowing an award of attorney's fees, as punitive damages, for a breach of this provision, would be, in essence, a reformation of the letters of protection to include an attorney's fees provision. The court therefore, in the exercise of its discretion, declines to award attorney's fees as punitive damages based upon the tortious conduct of Hirsch." The court further concluded that the defendant was innocent of wrongdoing and declined to award attorney's fees as punitive damages on the basis of vicarious liability.

Although the plaintiff recognizes the general bar to recovery of attorney's fees imposed by the American rule, it argues that punitive damages are appropriately recoverable in this case by the application of several theories. The plaintiff suggests that its attorney's fees in this action are part of its "actual costs," which are specifically recoverable under the terms of the letters of protection.[10] The "actual costs" referenced in the letters of protection are only those "incurred by you in connection with such closings" when they arise out of specific categories of malfeasance. Although it could be argued that attorney's fees incurred in an action for breach of contract arise out of the malfeasance, they more specifically are incurred in an effort to recover those costs. The plaintiff's position analytically would support the award of attorney's fees in any action for breach of contract, in that the fees are, broadly, incurred because of the breach. The American rule, however, may not be stretched so far. *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 326, 63 A.3d 896 (2013) (in absence of contractual provision to contrary, successful party not entitled to recover attorney's fees).

More specifically, the plaintiff contends that attorney fees are recoverable under the "tort exception"[11] to the rule barring the recovery of attorney's fees in contract actions; it urges that because the letters of protection contemplate the recovery of costs caused by tortious conduct and Hirsch's conduct was fraudulent, then punitive damages were recoverable under the contract, because punitive damages can be recovered in fraud actions.[12]

The plaintiff cannot prevail on this argument. The plaintiff's claim is not for damages based on fraud; rather, it is for damages based on breach of contract.

The court found that the plaintiff was entitled to recovery of costs incurred in the two foreclosure actions because Hirsch had acted fraudulently and dishonestly, and thus the "fraud or dishonesty" clause in the letters of protection had been satisfied. But it was not the defendant who had acted fraudulently; rather, another party's conduct, that of Hirsch, only triggered the contractual duty on the part of the defendant to reimburse the plaintiff. The court awarded as damages the "actual cost" of the fraud, but not the fees incurred in recovering the costs. The American rule, then, bars the plaintiff from recovering attorney's fees, even though the possibility of fraud on the part of third parties is contemplated. The letters of protection do not provide for the recovery of attorney's fees and do not create an exception to the rule. See, e.g., *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582–83, 923 A.2d 697 (2007).

The plaintiff further argues that even if the defendant itself did not act fraudulently or in such a manner as to trigger the award of attorney's fees by its own behavior, the defendant is vicariously liable for damages caused by Hirsch's conduct, because the defendant selected Hirsch and gave him unbridled discretion to act on the defendant's behalf. The court, however, did not abuse its discretion in concluding that the plaintiff could not recover attorney's fees as punitive damages on a theory of vicarious liability.

"[A]t common law, there is no vicarious liability for punitive damages . . . ." *Matthiessen* v. *Vanech*, 266 Conn. 822, 837, 836 A.2d 394 (2003). However, "[p]unitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal or a managerial agent authorized the doing and the manner of the act, or (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act." (Internal quotation marks omitted.) *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 654–55, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005), quoting 4 Restatement (Second) Torts, § 909 (1979).

The court found that there was "no basis . . . upon which to conclude that [the defendant] knew about, ratified, or directed Hirsch with respect to his complicity in Eoanou's machinations. There is no basis upon which to conclude that [the defendant] was negligent in its use of Hirsch as [an] agent." The court also found that, "quite to the contrary, Hirsch had been [the defendant's] agent for years without incident" and that "[the defendant] is innocent in this matter." The plaintiff has provided us with no basis on which to conclude that

these findings are in error. There is nothing in the record to suggest that fraudulent behavior was within Hirsch's scope of authority. These findings support the court's decision not to award attorney's fees as punitive damages in light of the defendant's innocence regarding Hirsch's actions. For the foregoing reasons, we conclude that the court did not abuse its discretion in declining to award attorney's fees.

III

The plaintiff claims that the court erred in calculating prejudgment interest pursuant to § 37-3a only from the return date of the first action filed. See footnote 6 of this opinion. It claims that interest should have been awarded as well for the period of time running from the closings in 2007, when the fraud occurred. We disagree.[13]

Section 37-3a (a) provides in relevant part: "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

"The decision of whether to grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The purpose of § 37-3a is to compensate plaintiffs who have been deprived of the use of money wrongfully withheld by defendants. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Citations omitted; internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 61, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010).

In deciding not to award prejudgment interest for the period of "detention" prior to the return date of this action, the court focused on our Supreme Court's decision in *Sosin* v. *Sosin*, 300 Conn. 205, 228, 14 A.3d 307 (2011), in which it held that: "Because § 37-3a provides that interest '*may be* recovered' . . . it is clear that the statute does not require an award of interest in every case in which money has been detained after it has become payable. Rather, an award of interest is discretionary." (Emphasis in original.) The trial court also highlighted that the primary purpose of § 37-3a is to compensate parties that have been deprived of the use of their money, not to punish. The court awarded prejudgment interest in the amount of 3 percent, running from the return date of "the first filed of the plaintiff's actions," April 13, 2010.

The plaintiff claims that the court should have calculated the prejudgment interest from the closing dates of April 24, 2007, for 47B Mardie Lane and May 9, 2007, for 52B Mardie Lane. Citing *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 518–19, 705 A.2d 215 (1998), the plaintiff argues that "[w]here interest is awarded pursuant to . . . § 37-3a, interest is to accrue from the date of the defendants' conversion through the date of the close of evidence at trial." The plaintiff, however, did not offer evidence that required the finding of unjustifiable detention by the defendant prior to the return date.The *Suarez-Negrete* case, which concerns an action for conversion, is not determinative of the present breach of contract action. In the present action, the defendant did not convert funds. The court did award interest from the time that the action was brought against the defendant. The court has wide discretion in matters regarding the award of prejudgment interest and, on the basis of the record before us, we cannot conclude that the court abused this discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Nationstar Mortgage, LLC, was substituted as plaintiff shortly before trial began. The named plaintiff, Aurora Loan Services, LLC (Aurora), was the predecessor loan servicer. For ease of reference, Nationstar Mortgage, LLC, will be referred to as the plaintiff.

[2] Harry Hirsch was also named as a defendant in the original complaint. The claims against him were dismissed for lack of standing. The action was withdrawn as to other defendants named in the plaintiff's initial complaint, including Geoffrey C. Williams, Xenia Kamberos, Thomas E. Gallagher, and Autumn Appraisals, LLC. The remaining defendant, Connecticut Attorney's Title Insurance Company, will be referred to as the defendant.

[3] The plaintiff lists twenty-two issues in its statement of issues, and groups claims into three sections, with multiple subsections, in the main body of its appellate brief. We review those claims that are adequately addressed in the main brief.

[4] First Magnus provided the mortgage loans for 47A and 47B Mardie Lane, and later sold the loans. While Deutsche Bank held the loans, Aurora brought the present action on behalf of Deutsche Bank. Subsequent to the commencement of the action, Aurora assigned its right to enforce the note as loan servicer to the plaintiff.

[5] The plaintiff conformed the amended complaint to the trial court's judgment dismissing the action against Hirsch for lack of standing.

[6] Originally, separate actions were commenced as to 47B and 52B Mardie Lane. The claims were similar and therefore consolidated for trial under one docket number, and the plaintiff filed a consolidated complaint.

[7] Appraisals of the properties performed in 2007, years before the foreclosure proceeding in 2014, were prepared under the assumption that the properties would be finished and certificates of occupancy would be issued for the properties. These appraisals valued 52B and 47B Mardie Lane at $380,000 and $385,000, respectively.

[8] The plaintiff conceded in oral argument before this court that the foreclosing institution offered the appraisals at the foreclosure hearing, and the appraisals necessarily were prepared at the request of Aurora, the plaintiff's predecessor in interest.

[9] "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights. . . . This court

also has recognized a bad faith exception to the American rule, which permits a court to award attorney's fees to the prevailing party on the basis of bad faith conduct of the other party or the other party's attorney.'' (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582–83, 923 A.2d 697 (2007).

[10] The plaintiff also argues that the court erred in relying on the presence of marketable title as a basis for declining to award attorney's fees. The court's finding that title was marketable formed a basis for its conclusions that the defendant was not liable under the title insurance policy claims and that the defendant was not liable under the first provision at issue in the letters of protection regarding the validity, enforceability or priority of the lien. Marketability of title did not factor into its conclusion that the defendant had breached the ''fraud or dishonesty'' provision of the letters of protection. The court did not rely on the marketability of title in deciding not to award attorney's fees.

[11] The plaintiff correctly asserts that, in some instances, attorney's fees may be recovered in contractual actions where fraud has been proved. ''Breach of contract founded on tortious conduct may allow the award of punitive damages. Such tortious conduct must be alleged in terms of wanton and malicious injury, evil motive and violence, for punitive damages may be awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.'' (Internal quotation marks omitted.) *L.F. Pace & Sons* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 48, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986); see also *Triangle Sheet Metal Works, Inc.* v. *Silver*, 154 Conn. 116, 127, 222 A.2d 220 (1966).

[12] ''In an action for fraud, the plaintiffs are entitled to punitive damages, in addition to general and special damages. . . . The purpose of awarding punitive damages is not to punish the defendant for his offense, but to compensate the plaintiff for his injuries. . . . The rule in this state as to torts is that punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights.'' (Citations omitted.) *DeSantis* v. *Piccadilly Land Corp.*, 3 Conn. App. 310, 315, 487 A.2d 1110 (1985).

[13] Because prejudgment interest may be awarded only for ''the detention of money after it becomes payable,'' there may be some question as to whether, in the circumstances of this case, the defendant wrongfully detained money at all after it became due and payable. This issue, however, was not presented by either party and, therefore, we do not reach it.

———————————————