******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

PAUL SITAR ET AL. v. SYFERLOCK
TECHNOLOGY CORPORATION
(AC 44244)

Moll, Suarez and Lavine, Js.

*Syllabus*

The plaintiffs, two former employees of the defendant, sought to recover
damages from the defendant for, inter alia, breach of their employment
contracts and failure to pay wages pursuant to statute (§ 31-72). The
trial court rendered judgment in favor of the plaintiffs on their respective
claims for breach of written contract and failure to pay wages pursuant
to § 31-72, and in favor of the defendant on the plaintiffs' respective
claims for breach of oral contract. The court declined to award the
plaintiffs double damages or attorney's fees as provided by § 31-72,
reasoning that such an award is appropriate only when the trial court
has found that the defendant acted with bad faith, arbitrariness, or
unreasonableness, which the trial court concluded was not demon-
strated in the present case, and the trial court declined to award prejudg-
ment interest on the amounts awarded to the plaintiffs. On appeal, the
plaintiffs claimed that the trial court erred in finding that there was no
bad faith, arbitrariness, or unreasonableness on the part of the defendant
to support an award of double damages and attorney's fees with respect
to the plaintiffs' claims for failure to pay wages pursuant to § 31-72, and
that the trial court abused its discretion in not awarding prejudgment
interest pursuant to statute (§ 37-3a (a)). *Held* that this court declined
to address the merits of the plaintiffs' claims, the plaintiffs having failed
to provide this court with an adequate record: pursuant to the applicable
rule of practice (§ 61-10 (a)), the plaintiffs, as the appellants in the
present case, bore the burden of providing this court with an adequate
record for review; moreover, although the trial occurred over three days,
the plaintiffs failed to provide this court with any transcripts and, in the
absence of such transcripts, this court could not evaluate the plaintiffs'
arguments under the applicable standards of review without resorting
to speculation; accordingly, the judgment of the trial court was affirmed.

Argued November 29, 2021—officially released March 29, 2022

*Procedural History*

Action to recover damages for, inter alia, unpaid
wages, and for other relief, brought to the Superior
Court in the judicial district of Ansonia-Milford and
tried to the court, *Pierson, J.*; judgment in part for the
defendant, from which the plaintiffs appealed to this
court. *Affirmed.*

*Ryan P. Driscoll*, for the appellants (plaintiffs).

*Colin B. Connor*, for the appellee (defendant).

*Opinion*

MOLL, J. The plaintiffs, Paul Sitar and Joseph Stage, appeal from the judgment of the trial court, following a court trial, insofar as the court concluded that they were not entitled to double damages and attorney's fees and declined to award prejudgment interest on the amounts awarded to them. On appeal, the plaintiffs claim that the trial court (1) erred in finding that there was no bad faith, arbitrariness, or unreasonableness on the part of the defendant, Syferlock Technology Corporation, to support an award of double damages and attorney's fees with respect to the plaintiffs' claims for failure to pay wages pursuant to General Statutes § 31-72,[1] and (2) abused its discretion in not awarding prejudgment interest pursuant to General Statutes § 37-3a (a).[2] We conclude that the record is inadequate for our review, and, accordingly, we decline to review the plaintiffs' claims and, thus, affirm the judgment of the trial court.

The following facts, as found by the trial court in its memorandum of decision and/or as stipulated by the parties,[3] and procedural history are relevant to our resolution of this appeal. In January, 2005, Sitar left his prior employment to work full-time for Grid Data Security, Inc. (GDS), a business entity formed to develop one-time password generation technology. Sitar worked at GDS from January, 2005, until late August, 2007. Stage began working at GDS in May, 2007, as its senior vice president of corporate development and worked there until approximately September 1, 2007. In August, 2007, Robert D. Russo, the president and treasurer of GDS, as well as an investor therein, called the loans that he had made to GDS, and, upon accepting GDS' patents as settlement of his loans, transferred the patents and goodwill to the defendant.

On September 1, 2007, Sitar began working as the defendant's chief executive officer (CEO) and remained in that role until September, 2010. In September, 2010, the defendant hired Christopher Cardell as its new CEO and changed Sitar's title to founder and president. Sitar's change in title did not alter his daily duties or the terms of his compensation, and he continued as founder and president until September, 2011.

The defendant had no "[human resources] person" during Cardell's employment as CEO, and Cardell performed human resources functions such as managing employees, maintaining employment agreements, and assuming responsibility for employee benefits administration. When Cardell became CEO, he did not determine whether the defendant had any signed employment agreements for its employees, and he did not determine whether Sitar had an executed employment agreement with the defendant until the present case was initiated. From the defendant's files, Cardell ultimately

produced a copy of Sitar's employment agreement, which was signed by Sitar but not by the defendant. The agreement was titled "Agreement Regarding Certain Conditions of Employment" dated September 1, 2007 (Sitar contract). The Sitar contract contained the defendant's offer for the position of "Chief Executive Officer" with terms including an "[a]nnual base salary of $12,500 per month," specifically, a "base salary [of] $150,000 per annum or such rate as the Board of Directors shall designate from time to time . . . which salary shall be payable in regular installments and as agreed and referenced in the September 1, 2007 offer letter and in accordance with the [defendant's] general payroll practices and shall be subject to customary withholding." The Sitar contract provided that it contained the entire understanding of the parties, it superseded "any prior agreements" between Sitar and the defendant, any amendments thereto required the prior written consent of the defendant and the "Executive" (an undefined term), and Sitar would serve as CEO "under the supervision and direction of the Board of Directors." The defendant provided Sitar with a healthcare plan, reimbursed him for documented company-related expenses, and issued to him, for each tax year from 2007 through 2011, W-2 forms, which reflected the amounts that he earned as its employee.

Stage entered into a written contract with the defendant dated September 1, 2007 (Stage contract). Both Stage and the defendant signed the Stage contract, and it contained many provisions that are similar or identical to the provisions in the Sitar contract, including the integration and amendment clauses. The Stage contract set forth, however, the following term: "Annual base salary of $12,500 per month to be paid on the last day of each month. Paid as follows: September 1, 2007, forward: $6,250 paid; $6,250 accrued," "Full monthly pay upon reaching adequate sales/cash flow or upon adequate financing (subject to financing terms)," and "Accrual amounts back-paid upon reaching adequate sales/cash flow or upon adequate financing (subject to financing terms)."

Stage left his employment with the defendant in March, 2011. Sitar resigned from his positions with the defendant on September 2, 2011.

On July 5, 2016, the plaintiffs commenced this action asserting that the defendant owed them unpaid wages. On March 9, 2020, the plaintiffs filed their second amended complaint (i.e., the operative complaint), which asserted the following counts: (1) on behalf of Sitar, breach of written contract (count one), breach of oral contract (count two), and failure to pay wages pursuant to § 31-72 (count three); and (2) on behalf of Stage, breach of written contract (count four), breach of oral contract (count five), and failure to pay wages pursuant to § 31-72 (count six).

In count one, Sitar alleged that the defendant owed him $157,245 in accrued unpaid salary pursuant to the Sitar contract. In count two, Sitar alleged that Russo had promised to pay him certain moneys carried over from GDS, that such promise constituted a verbal contract, and that the defendant was bound thereby and owed him $280,250 in connection therewith. In count three, Sitar alleged that the defendant had "arbitrarily, unreasonably, and in bad faith" failed to pay him the foregoing wages, thus entitling him to double damages and attorney's fees pursuant to § 31-72. In count four, Stage alleged that the defendant owed him $114,244.60 in accrued unpaid salary pursuant to the Stage contract. In count five, Stage alleged that Russo had promised to pay him certain moneys carried over from GDS, that such promise constituted a verbal contract, and that the defendant was bound thereby and owed him $43,750 in connection therewith. In count six, Stage alleged that the defendant had "arbitrarily, unreasonably, and in bad faith" failed to pay him the foregoing wages, thus entitling him to double damages and attorney's fees pursuant to § 31-72. On March 10, 2020, the defendant filed an amended answer and special defenses.

The matter was tried to the trial court, *Pierson, J.*, on February 25, 26, and 27, 2020. On July 24, 2020, the court rendered judgment (1) in favor of Sitar on his claims for breach of written contract (count one) and failure to pay wages pursuant to § 31-72 (count three), (2) in favor of Stage on his claims for breach of written contract (count four) and failure to pay wages pursuant to § 31-72 (count six), and (3) in favor of the defendant on the plaintiffs' respective claims for breach of oral contract (counts two and five).[4]

As to Sitar, with respect to count one, the court concluded that Sitar had proven the formation of the Sitar contract and the defendant's breach thereof by virtue of its failure to pay Sitar the amount of $157,245 for work he performed while in the defendant's employ. In this connection, the court expressly rejected the defendant's first special defense that no agreement existed between it and Sitar because the Sitar contract was not signed by Russo on its behalf. With respect to count three, the court concluded: "While the defendant's breach of contract in failing to pay [Sitar] accrued wages violated § 31-72, this failure was not arbitrary or unreasonable and did not constitute bad faith. Although the defendant did not prevail on its defense of the claim brought under the Sitar contract, it had good faith reasons to believe that it did not owe Sitar amounts under that document, including without limitation the fact that its designated representative did not sign the Sitar contract. '[It] is well established . . . that it is appropriate for a plaintiff to recover attorney's fees, and double damages under [§ 31-72], only when the trial court has found that the defendant acted with bad faith, arbi-

trariness or unreasonableness.' . . . *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 724, 941 A.2d 309 (2008). Bad faith, unreasonableness, or arbitrariness has not been demonstrated here; to the contrary, the defendant has shown good faith reasons—albeit reasons rejected by the court—for failing to pay Sitar accrued salary. As a result, the court declines to award Sitar double damages or attorney's fees as provided by § 31-72."

As to Stage, with respect to count four, the court concluded that, because "the record demonstrates that the defendant had 'adequate' sales and cash flow to pay Stage accrued salary," the defendant breached the Stage contract (the existence of which was undisputed) by failing to pay him accrued salary in the amount of $114,244.60. With respect to count six, the court concluded that, although the defendant's foregoing breach of the Stage contract constituted a violation of § 31-72, "it has not been shown that the defendant acted in bad faith, unreasonably, or arbitrarily in failing to pay Stage his accrued salary to date. The defendant demonstrated good faith reasons for failing to do so, including without limitation based on a colorable interpretation of the words 'adequate [sales]/cash flow,' as set forth in the Stage contract. Although the court disagrees with the defendant's interpretation of this language, given the state of its financial affairs and the governing language of the Stage contract, it was not arbitrary or unreasonable for the defendant to have failed to pay Stage accrued salary, nor did that failure constitute an act of bad faith. As a result, the court also declines to award Stage double damages or attorney's fees as provided by § 31-72."

Whereupon, the court awarded Sitar $157,245 on each of counts one and three and awarded Stage $114,244.60 on each of counts four and six. The court declined to award prejudgment interest on the amounts awarded. Thereafter, the plaintiffs filed a motion for reconsideration and/or reargument, which was denied by the court on August 17, 2020. This appeal followed.

On appeal, the plaintiffs claim that the trial court (1) erred in finding that there was no bad faith, arbitrariness, or unreasonableness on the part of the defendant to support an award of double damages and attorney's fees with respect to the plaintiffs' claims for failure to pay wages pursuant to § 31-72, and (2) abused its discretion in not awarding prejudgment interest pursuant to § 37-3a (a). We decline to address the merits of these claims because the plaintiffs have failed to provide this court with an adequate record.

To put into its proper context the lack of an adequate record for review of this appeal, we briefly recite the standards of review applicable to each of the plaintiffs' claims. First, to the extent that the plaintiffs claim that they are entitled to double damages and attorney's fees

under § 31-72 as a matter of law, our review is plenary. See *Ravetto* v. *Triton Thalassic Technologies, Inc.*, supra, 285 Conn. 725. Second, to the extent that the plaintiffs challenge the trial court's factual findings in connection with its determination that bad faith, unreasonableness, or arbitrariness on the part of the defendant had not been proven, such findings are subject to the clearly erroneous standard of review.[5] See id., 727. Finally, "[t]he decision of whether to grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Aurora Loan Services, LLC* v. *Hirsch*, 170 Conn. App. 439, 458, 154 A.3d 1009 (2017).

Practice Book § 61-10 (a) provides: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire record is complete, correct and otherwise perfected for presentation on appeal." "The general purpose of [the relevant] rules of practice . . . [requiring the appellant to provide a sufficient record] is to ensure that there is a trial court record that is adequate for an informed appellate review of the various claims presented by the parties." (Internal quotation marks omitted.) *R & P Realty Co.* v. *Peerless Indemnity Ins. Co.*, 193 Conn. App. 374, 379, 219 A.3d 429 (2019).

In the present case, in claiming that the trial court erred in (1) failing to find bad faith, unreasonableness, or arbitrariness on the part of the defendant and (2) declining to award prejudgment interest, the plaintiffs have presented fact-intensive claims that, as presented, require us to have a complete and accurate picture of the evidence presented at trial. The plaintiffs have not provided this court, however, with any transcripts of the three day trial. In the absence of such transcripts, we would have to resort to speculation in order to evaluate the plaintiffs' claims under the applicable standards of review, which we decline to do. See id., 380 (this court declined to review appellate claim where plaintiffs provided only partial trial transcript); *Buehler* v. *Buehler*, 175 Conn. App. 375, 382, 167 A.3d 1108 (2017) (this court declined to review appellate claim because defendant failed to provide complete transcript of relevant hearing); *Calo-Turner* v. *Turner*, 83 Conn. App. 53, 56–57, 847 A.2d 1085 (2004) (this court declined to review appellate claim where defendant failed to provide complete transcript of trial proceedings). Accordingly, we decline to review the plaintiffs' claims.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections

31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court. Any agreement between an employee and his or her employer for payment of wages other than as specified in said sections shall be no defense to such action. . . ."

[2] General Statutes § 37-3a (a) provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909 . . . as damages for the detention of money after it becomes payable. . . ."

[3] On the day of trial, the plaintiffs submitted a stipulation of facts.

[4] With respect to counts two and five, the court concluded that the plaintiffs' respective claims for breach of oral contract were barred by the parol evidence rule and that the plaintiffs had failed to prove the existence of a verbal promise in any event. The plaintiffs do not challenge these conclusions on appeal.

[5] Although the plaintiffs assert that they "are not challenging the factual findings of the court [with regard to bad faith, and are instead] contesting the court's application of the law to those facts," they explicitly challenge certain of the trial court's factual findings regarding bad faith in their principal appellate brief. By way of example, with regard to Sitar, the plaintiffs argue that "[t]he trial court's premise that there existed no bad faith, arbitrariness or unreasonableness because [the defendant] believed there was no employment agreement is faulty. The evidence produced at trial confirms that [the defendant] knew Sitar had an employment agreement and, at a minimum, treated him as an employee. . . . The trial court could not have reasonably found that [the defendant's] defense (i.e., that Sitar had no employment agreement) was reasonable, in good faith, and not arbitrary." Moreover, with regard to Stage, the plaintiffs contend that the trial court "somehow found that [the defendant's] 'colorable interpretation' of the words of Stage's contract meant there was no arbitrariness, bad faith or unreasonableness," and that this finding constituted "error."