MARY E. CALO-TURNER *v.* WILLIAM TURNER
(AC 23783)

Lavery, C. J., and Schaller and Bishop, Js.

Argued February 10—officially released May 18, 2004

*Robert S. Kolesnik, Sr.,* for the appellant (defendant).

*Kenneth J. Bartschi,* with whom, were *Karen L. Dowd,* and, on the brief, *Rosemary E. Giuliano,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. In this marital dissolution appeal, the defendant, William Turner, challenges the financial orders entered by the trial court in its judgment dissolving the parties' marriage. The defendant alleges that the court (1) incorrectly concluded that the parties were equally responsible for the breakdown of the marriage (2) abused its discretion by awarding the plaintiff, Mary E. Calo-Turner, $300 per week in alimony and (3) abused its discretion by awarding the plaintiff one half of the 66,176 shares of Sycamore Networks, Inc., stock that were held solely in the defendant's name. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion of the issues on appeal. The parties were married on February 24, 1990. The plaintiff, who was born in 1957, was diagnosed in 1998 with a

life threatening illness. Confined to a wheelchair, she has difficulty with speech and motor functioning and requires assistance with cooking and cleaning. As of the date of the dissolution, she had a weekly income, not including pendente lite alimony, of $324 in social security disability payments and rental income, and she had weekly expenses totaling $795. Her assets included a bank account with a balance of $2527, a life insurance policy with a cash surrender value of $4449.94, a 401 (k) plan with a value of $31,203 and another worth $2211.20. She also had $6000 in liabilities, not including legal fees owed to trial counsel.

Born in 1955, the defendant was, on the date of dissolution, employed by Sycamore Networks, Inc., and had a net weekly income of $1308, assets of approximately $689,000 and liabilities of approximately $54,000. His assets included his vested interest in 66,176 shares of Sycamore Networks, Inc., stock and options to purchase an additional 6000 shares.

In its judgment dissolving the parties' marriage, the court made numerous findings, including a determination that the parties had separated on December 1, 2000, and that the parties shared equal culpability for the breakdown of the marriage. The court ordered the defendant to pay to the plaintiff $300 per week in alimony, and the court divided the 66,176 shares of Sycamore Networks, Inc., stock equally between the parties, leaving the stock options solely in the defendant's name. This appeal followed.

I

The defendant first claims that the court incorrectly found that the parties were equally at fault for the breakdown of the marriage. We decline to review his claim.

To respond to the defendant's claim, we are required to determine whether there was a basis from which the

trial court could have found that the parties were equally at fault for the breakdown of the marriage. See *Jewett* v. *Jewett*, 265 Conn. 669, 691, 830 A.2d 193 (2003). The defendant, however, has failed to provide this court with a complete transcript of the trial proceedings. Additionally, the trial court was not asked to articulate its finding in this regard. In light of the inadequate record, we are not able to assess the defendant's claim.

It is well established that "[i]t is the responsibility of the appellant to provide an adequate record for review as provided in [Practice Book §] 61-10. . . . Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . ." (Citations omitted; internal quotation marks omitted.) *Bradley* v. *Randall*, 63 Conn. App. 92, 95–96, 772 A.2d 722 (2001).

In its memorandum of decision, the court did not elucidate its reasoning or the basis for its determination that the parties were equally at fault for the breakdown of the marriage. Furthermore, as noted, the defendant has provided this court only with excerpts of his trial testimony and not the complete trial transcript. "[B]ecause the defendant failed to present an adequate record for review, [w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Knutson Mortgage Corp.* v. *Bernier*, 67 Conn. App. 768, 773, 789 A.2d 528

(2002). Accordingly, we decline to review the defendant's claim.[1]

## II

The defendant next claims that the court abused its discretion in awarding the plaintiff $300 per week in alimony. Specifically, he argues that the court failed to consider that he had provided the plaintiff with a mortgage free residence that had a monthly rental value of approximately $1800. We disagree.

The following additional facts are relevant to our discussion of that issue. On September 15, 2000, the court approved a stipulation by the parties that the plaintiff would vacate the marital residence and that the defendant, in turn, would deposit $250,000 in trust for the plaintiff to purchase a new home. To secure the funds needed to effectuate the agreement, the defendant sold several shares of stock held in his name. Pursuant to the parties' agreement, the plaintiff vacated the marital residence on December 1, 2000, in conjunction with her purchase of a residence for $192,000 on Green Hill Road in Middlebury. The balance of the $250,000 was utilized for the payment of taxes and homeowner's insurance for the plaintiff's new residence. As stipulated, the parties considered that residence to be marital property subject to equitable distribution by the court in conjunction with the parties' marital dissolution.

Pursuant to the judgment orders of December 6, 2002, the plaintiff was awarded the residence on Green Hill Road, and the defendant retained the residence at Burr Road in the Higganum section of Haddam. As noted,

[1] The defendant also claims that the court relied on fault only in formulating its orders. Aside from the court's reference to General Statutes § 46b-81, in its decision, the court did not indicate the weight it assigned to each of the statutory factors. Absent an articulation of the § 46b-81 factors on which the court based its orders, that claim, too, is not amenable to review.

the court ordered the defendant to pay the plaintiff $300 per week in alimony. In making its alimony order, the court rejected the defendant's argument that the amount of alimony ordered should be reduced due to the fact that he had provided the funds for a new mortgage free residence for the plaintiff and that the plaintiff's residence allegedly had a fair market rental value of approximately $1800 per month.

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . Accordingly, it is only in rare instances that the court's decision will be disturbed." (Citations omitted; internal quotation marks omitted.) *Rosato* v. *Rosato*, 77 Conn. App. 9, 13, 822 A.2d 974 (2003).

Our careful review of the record leads us to conclude that the court did not abuse its discretion in its alimony order. In its memorandum of decision, the court noted that in fashioning its alimony order, it reviewed the statutory guidelines as established by General Statutes § 46b-82.[2] Additionally, the court noted that it had examined thoroughly the parties' financial situation, the length of the marriage, the health of the parties and the

---

[2] Although the court must consider all the statutory criteria, the court is not required to make explicit findings regarding each one. *Mongillo* v. *Mongillo*, 69 Conn. App. 472, 479, 794 A.2d 1054, cert. denied, 261 Conn. 928, 806 A.2d 1065 (2002).

cause for the breakdown of the marriage. From the record, we note, as well, that the financial affidavits filed by the parties plainly reveal that the plaintiff had significantly fewer assets and less income and earning capacity than did the defendant. Furthermore, as noted by the court at the time of the marital dissolution hearing, the plaintiff was receiving social security disability income and was confined to a wheelchair as a result of her debilitating illness, and she required assistance to carry out her routine daily activities. Finally, whether or not the plaintiff's residence had a monthly rental value and required no mortgage payments by the plaintiff, her affidavit clearly showed that she operated with a monthly budget deficit. Consequently, the court's alimony order was not an abuse of discretion.

### III

The defendant last claims that the court improperly awarded the plaintiff one half of the 66,176 shares of Sycamore Networks, Inc., stock that was held solely in his name. We disagree.

The following additional facts are relevant to our discussion of that issue. In July, 1999, the defendant was affiliated with Sirocco Systems (Sirocco) as an independent contractor. While an independent contractor, he purchased 15,000 shares of Sirocco stock under its stock option plan. On November 1, 1999, as an incentive and in conjunction with the defendant becoming an employee of Sirocco, he was given an option, which he exercised, to purchase 55,000 shares of company stock, subject to a restriction that he would be required to sell that stock back to the company should he leave its employment within a stated time frame. Subsequently, on September 7, 2000, Sirocco merged with Sycamore Networks, Inc. As of the merger date, the defendant had an interest in 116,250 shares of Sirocco stock, some of which he owned outright and the balance

of which were subject to the restriction regarding his continuing employment. As a result of the merger, his interest in Sirocco stock converted to approximately 79,850 shares of Sycamore Networks, Inc., stock, 28,336 of which were subject to the employment resale restriction. The defendant's interest in those once restricted shares, however, became vested over the next two years so that by October, 2002, the defendant's stock holdings in Sycamore Networks, Inc., were fully unrestricted. As of the date of dissolution, the defendant owned 66,176 shares of Sycamore Networks, Inc., stock outright. Additionally, he held options to purchase an additional 6000 shares through an offering made to him by the company in April, 2001. The court divided the defendant's stock equally between the parties while permitting the defendant to retain sole ownership of the options that he had received in April, 2001, and had not yet exercised. With those additional facts as a backdrop, we now turn to the defendant's claim regarding the division of stock.

"As a general framework, [t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within [General Statutes] § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Internal quotation marks omitted.) *Bender* v. *Bender,* 258 Conn. 733, 740, 785 A.2d 197 (2001). As noted, we review the court's financial orders under an abuse of discretion standard. See *Rosato* v. *Rosato,* supra, 77 Conn. App. 13.

On appeal, the defendant does not dispute that the 66,176 shares of stock were marital property subject to distribution under § 46b-81. Rather, he argues that because a majority of the shares became fully vested in him after the parties separated, the court abused its

discretion in awarding the plaintiff one half of the stock. He reasons that because the plaintiff did not contribute to his acquisition of that stock or to its appreciation after their separation, it was improper for the court to have assigned a portion of those postseparation assets to the plaintiff.[3] We are not persuaded.

The defendant premises his argument on the notion that a court does not have the authority to assign property acquired by either party after separation or any part of the postseparation appreciation of an asset. Specifically, he claims that in *Wendt* v. *Wendt*, 59 Conn. App. 656, 665, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000), we established a rule that a spouse is not entitled to share in assets or the appreciation of those assets that are received or earned after the date of separation. The defendant misconstrues *Wendt*. In that case, we found that the court did not *abuse its discretion* in declining to award the plaintiff the appreciated value in the defendant's property that was acquired after the parties' separation, but we did not determine the inverse, i.e., that it would have been an abuse of discretion for the court to have done so. Id. Indeed, in *Wendt*, we reiterated the general proposition that a trial court has "extensive discretion regarding financial awards in dissolution actions"; id.; and that

---

[3] To the extent that the defendant makes a claim that vested stock is not marital property, we find that claim patently without merit. It is well established that *vested* property is subject to distribution as of the date of dissolution. See *Krafick* v. *Krafick*, 234 Conn. 783, 797, 663 A.2d 365 (1995). Furthermore, recent decisions from our Supreme Court indicate that presently existing property rights are subject to distribution under § 46b-81. See *Bender* v. *Bender*, supra, 258 Conn. 748; *Lopiano* v. *Lopiano*, 247 Conn. 356, 371, 752 A.2d 1000 (1998) (holding that spouse's personal injury award is marital property because it was received during marriage). Last, the defendant's reliance on *Bornemann* v. *Bornemann*, 245 Conn. 508, 515–16, 752 A.2d 978 (1998), is misplaced, as *Bornemann* concerned presently existing stock options that had not been exercised, and not vested stock. Here, all of the defendant's 66,176 shares of stock were vested as of the date of dissolution.

"no single rule or formula is applicable to every dissolution case involving employee stock options." (Internal quotation marks omitted.) Id., 667.

In the present case, the court thoroughly examined each criterion set forth in § 46b-81 (c) in awarding the plaintiff one half of the defendant's Sycamore Networks, Inc., stock. Although the trial court in *Wendt* afforded great weight to one of the criteria, the spouse's contribution to the acquisition and appreciation of an asset, the court in this case was not required to afford the same weight to that factor. See id.; *Parley* v. *Parley*, 72 Conn. App. 742, 752, 807 A.2d 982 (2002) (court need not give equal weight to each statutory factor). Under the facts of this case and for the reasons noted in part II, the stock disposition made by the court was well within the parameters of its discretion.[4] Accordingly, the defendant's claim must fail.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] From the court's orders, it is clear, however, that the court did consider that factor, as the court declined to award the plaintiff any of the defendant's Sycamore Networks, Inc., stock that he received after April 9, 2001.

[5] The defendant also claims that the court's finding of the date of separation to be December 1, 2000, was clearly erroneous. As we already have concluded that the court did not abuse its discretion by awarding the plaintiff stock that vested postseparation, we need not address that claim.