******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

R & P REALTY COMPANY ET AL. *v.*
PEERLESS INDEMNITY
INSURANCE COMPANY
(AC 40864)

Lavine, Moll and Bishop, Js.

*Syllabus*

The plaintiffs, R Co. and U Co., sought to recover damages from the defendant insurance company for breach of contract. R Co. had leased certain property to U Co., which operated a business in a building on the property that was damaged by an overload of snow and ice on its roof. At that time, the defendant provided a policy of casualty insurance to the plaintiffs, who filed an insurance claim for the damage to the building. The defendant accepted that the roof had been damaged by an event covered by the policy and agreed that replacing the roof and its supporting structures was necessary. After the parties had engaged in an adjustment process, the defendant remitted a payment to the plaintiffs in the amount of $167,006.03, upon which the parties had settled, and a portion of which was allocated to the cost of demolishing the existing roof. As part of the rebuilding process, a company retained by the plaintiffs found that asbestos containing material was present in at least two small areas of the roofing membrane and that lead based paint was detected on a ceiling located in the building. The cost of demolishing and removing all of the old roofing material in a safe and safety compliant manner was $90,139.26. The defendant refused to pay the additional demolition costs, and this action followed. The trial court rendered judgment for the defendant on the breach of contract count, from which the plaintiffs appealed to this court. They claimed that the trial court erroneously concluded that the defendant did not breach the policy by declining to cover the increased demolition costs resulting from the presence of asbestos and lead in the building. Specifically, the plaintiffs contended that the trial court improperly found that the increased demolition costs constituted replacement costs, rather than being a component of the actual cash value of the plaintiffs' loss, and that the plaintiffs failed to provide reasonable notice to the defendant of their claim seeking recovery for the increased demolition costs. *Held* that the plaintiffs having failed to provide this court with an adequate record, this court declined to address the merits of their claim on appeal: although the trial occurred over two days, the plaintiffs provided this court with only a partial transcript consisting of the testimony of a single witness on the second day of trial, and in the absence of transcripts of the entire trial, this court could not evaluate the plaintiff's arguments in support of their appellate claim without resorting to speculation; accordingly, the judgment of the trial court was affirmed.

Argued March 14—officially released October 1, 2019

*Procedural History*

Action to recover damages for breach of contract brought to the Superior Court in the judicial district of New Haven, where the matter was tried to the court, *Pittman, J.*; judgment for the defendant, from which the plaintiffs appealed to this court. *Affirmed.*

*Richard F. Connors*, for the appellants (plaintiffs).

*Heather J. Adams*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiffs, R & P Realty Company and Unger's Floor Covering, Inc., appeal from the judgment of the trial court, following a court trial, rendered in favor of the defendant, Peerless Indemnity Insurance Company, on count one of their operative complaint sounding in breach of contract. On appeal, the plaintiffs claim that the trial court erred in concluding that the defendant did not breach the parties' casualty insurance policy by declining to pay for the increased costs of demolition resulting from the presence of asbestos and lead within the insured property, which the plaintiffs discovered after the defendant had remitted an initial insurance payout to which the parties agreed. We conclude that the record is inadequate for our review, and, accordingly, we decline to review the plaintiffs' claim and, thus, affirm the judgment of the trial court.

The following facts, as found by the trial court in its memorandum of decision or as undisputed in the record, and procedural history are necessary for our discussion. At all relevant times, R & P Realty Company owned real property located at 915 Grand Avenue in New Haven, which it leased to Unger's Floor Covering, Inc., a floor covering business in an older brick building situated on the property. In February, 2011, the building was damaged by an overload of snow and ice on its roof. At that time, the defendant provided a policy of casualty insurance (policy) to the plaintiffs. Pursuant to the policy, the plaintiffs filed an insurance claim for the damage to the building caused by the snow and ice overload. The defendant accepted that the roof had been damaged by an event covered by the policy and agreed with the plaintiffs that replacing the roof and its supporting structures was necessary. On October 17, 2012, after the parties had engaged in an adjustment process, the defendant remitted a payment to the plaintiffs in the amount of $167,006.03, upon which the parties had settled. The payment included the cost for removing and rebuilding the roof with new supporting structures, reconfiguring certain heating and ventilation equipment and electric routes, and repairing or renovating certain interior areas and finishes. Of the $167,006.03 paid by the defendant to the plaintiffs, $26,738.83 was allocated to the cost of demolishing the existing roof.[1]

In 2013, the plaintiffs began planning to reconstruct the damaged roof. As part of the rebuilding process, they retained a company to test for the presence of asbestos and lead in the components to be demolished during the reconstruction of the roof. The company found that asbestos containing material was present in at least two small areas of the roofing membrane, and that lead based paint was detected on an old metal ceiling located underneath a hanging ceiling in the building. During the adjustment process, the parties had

contemplated the demolition of those components, but they never discussed the possible presence of asbestos or lead therein. The demolition of materials containing asbestos and lead is subject to Occupational Safety and Health Administration regulations and state laws, which require workers involved in such demolition to have special training, clothing, and apparatus, and that there be a special means of handling and removing the debris created by such demolition. According to a revised estimate obtained by the plaintiffs, the cost of demolishing and removing all of the old roofing material in a safe and safety compliant manner was $90,139.26. The defendant refused to pay the additional demolition costs.

On February 14, 2013, the plaintiffs commenced the present action against the defendant. In count one of the operative two count complaint filed on September 3, 2013, the plaintiffs alleged that the defendant had breached the policy by failing to fully compensate them for the loss they sustained resulting from the damage to the building caused by the snow and ice overload.[2] More specifically, they contended that, in contravention of the policy, the defendant refused to cover the increased demolition costs resulting from the presence of asbestos and lead in the building.[3] On April 22, 2014, the defendant filed an answer and special defenses. On June 26, 2015, the plaintiffs filed a reply, denying the allegations set forth in the defendant's special defenses.

On August 31, 2017, following a two day court trial, the court issued a memorandum of decision rendering judgment on count one in favor of the defendant. After determining that the presence of asbestos and lead in the building was a latent condition not contemplated by the parties during the adjustment process, the court stated in relevant part: "[T]he defendant insurer might still be obligated under the policy if it had been given reasonable notice of the supplemental claim [for the increased demolition costs]. But it appears that the issue of asbestos and lead was never presented to the defendant until nearly the start of this litigation, certainly more than two years after the date of the loss. . . . [I]f recovery is sought for the repair or replacement cost, rather than the actual cash value, the policy requires the [plaintiffs] to first perform the repairs before the defendant is obligated to pay for these increased costs." This appeal followed.

On appeal, the plaintiffs claim that the court erroneously concluded that the defendant did not breach the policy by declining to cover the increased demolition costs resulting from the presence of asbestos and lead in the building. Specifically, the plaintiffs contend that the court improperly found that (1) the increased demolition costs constituted replacement costs, rather than being a component of the actual cash value of the plaintiffs' loss,[4] and (2) the plaintiffs failed to provide reasonable notice to the defendant of their claim seeking

recovery for the increased demolition costs. We decline to address the merits of this claim because the plaintiffs have failed to provide this court with an adequate record.

Practice Book § 61-10 (a) provides: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire record is complete, correct and otherwise perfected for presentation on appeal." "The general purpose of [the relevant] rules of practice . . . [requiring the appellant to provide a sufficient record] is to ensure that there is a trial court record that is adequate for an informed appellate review of the various claims presented by the parties." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 175 Conn. App. 375, 382, 167 A.3d 1108 (2017). This court also has explained that "[a]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record . . . . Without the necessary factual and legal conclusions . . . any decision made by us respecting [the claims raised on appeal] would be entirely speculative." (Internal quotation marks omitted.) *Cianbro Corp.* v. *National Eastern Corp.*, 102 Conn. App. 61, 72, 924 A.2d 160 (2007); see also *Calo-Turner* v. *Turner*, 83 Conn. App. 53, 56, 847 A.2d 1085 (2004).

In the present case, the trial occurred over two days. In claiming that the record is devoid of any evidence to support the trial court's findings, however, the plaintiffs have provided this court only with a partial transcript consisting of the testimony of a single witness on the second day of trial. In the absence of transcripts of the entire trial, we cannot evaluate the plaintiffs' arguments in support of their appellate claim without resorting to speculation. See, e.g., *Vasquez* v. *Rocco*, 267 Conn. 59, 71–73, 836 A.2d 1158 (2003) (concluding that plaintiff failed to provide adequate record regarding whether trial court's ruling precluding plaintiff from adducing certain evidence on cross-examination was harmful). As previously noted, we decline to do so. See *Buehler* v. *Buehler*, supra, 175 Conn. App. 382 (this court would not surmise, speculate, or guess at factual predicate for trial court's rulings and declined to review appellate claim where defendant failed to provide complete record of trial court proceedings); *Calo-Turner* v. *Turner*, supra, 83 Conn. App. 56–57 (same); see generally *Rice* v. *Housing Authority*, 129 Conn. App. 614, 616, 20 A.3d 1270 (2011) (this court unable to determine whether evidence supported plaintiff's arguments regarding granting of motion to set aside verdict where no transcripts had been filed). Accordingly, we decline to review the plaintiffs' claim.

The judgment is affirmed.

[1] The court noted that the parties had used "the 'actual cash value' rubric in agreeing to the loss payout, rather than the restoration or replacement

cost." Generally, the "actual cash value" of a loss is the cost of repairing or replacing the loss, less depreciation, whereas the "replacement cost" of a loss is the actual cost of repairing or replacing the loss without a deduction for depreciation. See *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 245 n.3, 720 A.2d 879 (1998) (discussing actual cash value and replacement cost in case involving fire insurance coverage); see also *Kellogg* v. *Middlesex Mutual Assurance Co.*, 326 Conn. 638, 641 n.2, 165 A.3d 1228 (2017) ("Many insurance policies expressly provide that an insured may recover the [actual cash value] of destroyed property, and subsequently make an additional claim on a replacement cost basis. . . . [S]uch policies invariably include as a condition precedent to a supplemental replacement cost recovery a requirement that the insured first complete restoration of its property." [Internal quotation marks omitted.]).

[2] In count two of the operative complaint, the plaintiffs alleged that the defendant had breached the terms of the policy by failing to fully compensate them for a separate loss they suffered in August, 2011, resulting from damage to the building caused by a hurricane. The plaintiffs later abandoned that claim.

[3] In addition, the plaintiffs asserted that the policy obligated the defendant to pay costs associated with the repair and reconstruction of the exterior walls of the building. The court rejected the plaintiffs' claim seeking recovery for the damage to the exterior walls. The plaintiffs have not appealed from that portion of the court's judgment.

[4] See footnote 1 of this opinion.

_____