******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## DONNA KRAUSMAN *v.* LIBERTY MUTUAL INSURANCE COMPANY
### (AC 46782)

Elgo, Moll and Harper, Js.

*Syllabus*

The plaintiff insured appealed from the trial court's judgment for the defendant insurance company on her amended complaint alleging a violation of the Connecticut Unfair Trade Practices Act and a breach of the implied covenant of good faith and fair dealing in an insurance dispute concerning underinsured motorist benefits. She claimed, inter alia, that the court improperly granted the defendant's motion to bifurcate and stay discovery. *Held*:

The trial court did not abuse its discretion in granting the defendant's motion to bifurcate and stay discovery, as the court reasonably could have concluded that bifurcation of the claims served interests of convenience and judicial efficiency and may have negated the need to litigate certain other issues.

The trial court did not abuse its discretion in denying the plaintiff's motion for an order of compliance with her discovery requests, as the defendant eventually filed a notice of compliance and the plaintiff did not allege any prejudice resulting from the defendant's delay in complying with her discovery requests.

This court declined to reach the merits of the plaintiff's claim that the trial court erred with respect to certain legal and factual determinations, as the plaintiff failed to furnish an adequate record for review.

The trial court applied a proper legal standard in ruling on the counts of the plaintiff's complaint alleging that the defendant failed to act in good faith pursuant to a provision of CUTPA and that it acted in bad faith in violation of the implied covenant of good faith and fair dealing, as the court reasonably could have concluded, in light of the evidence and the related findings of fact, that the plaintiff failed to satisfy her burden of demonstrating that the defendant had acted in bad faith.

Argued October 29, 2024—officially released October 28, 2025

*Procedural History*

Action to recover underinsured motorist benefits allegedly due pursuant to an automobile insurance policy issued by the defendant, and for other relief, brought

to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Jacobs, J.*, granted the defendant's motion to bifurcate; thereafter, the underinsured motorist claim was referred to an arbitrator, who issued a decision for the plaintiff; subsequently, the court, *Jacobs, J.*, granted the plaintiff's motion for judgment in accordance with the arbitrator's award; thereafter, the court, *Hernandez, J.*, denied the plaintiff's motion for an order of compliance; subsequently, the court, *Krumeich, J.*, granted in part the defendant's motion for summary judgment, and the plaintiff filed an amended complaint; thereafter, the case was tried to the court, *Hon. Charles T. Lee*, judge trial referee; judgment for the defendant on the amended complaint, from which the plaintiff appealed to this court. *Affirmed.*

*Steven A. Landis*, with whom, on the brief, was *Alan Scott Pickel*, for the appellant (plaintiff).

*Kevin P. Polansky*, for the appellee (defendant).

*Opinion*

ELGO, J. The plaintiff, Donna Krausman, appeals from the judgment of the trial court in this insurance coverage dispute. The plaintiff claims that the court improperly (1) granted a motion to bifurcate and stay discovery filed by the defendant, Liberty Mutual Insurance Company, (2) denied her motion for an order of compliance, and (3) rendered judgment in favor of the defendant on counts three and four of the operative complaint. We affirm the judgment of the trial court.

The facts of the underlying automobile accident are not in dispute. On April 14, 2015, the plaintiff was operating a vehicle insured by the defendant. At the intersection of Fifth Street and Gregory Boulevard in Norwalk, a vehicle operated by Anne Neilson collided with the plaintiff's vehicle, causing physical injury to the plaintiff.

Neilson's automobile insurance policy provided $50,000 in coverage for bodily injury. After the plaintiff made a claim against Neilson, Neilson's insurer paid the plaintiff $50,000, the full amount available under Neilson's policy.

The plaintiff's insurance policy with the defendant provided $100,000 in underinsured motorist coverage. On May 1, 2015, the plaintiff, through her attorney, advised the defendant of a potential underinsured motorist claim. After she recovered the full amount available under Neilson's policy, the plaintiff notified the defendant on October 26, 2016, that she would be pursuing an underinsured motorist claim. At that time, she provided the defendant with copies of her medical records and bills, verification of Neilson's policy limits, a copy of the settlement check from Neilson's insurer, and an affidavit verifying that Neilson had no other insurance. Those materials indicated, inter alia, that the plaintiff had incurred $17,138.52 in medical expenses as a result of the April 14, 2015 automobile accident.

On December 7, 2016, the defendant's claim adjuster completed her initial evaluation of the plaintiff's claim and concluded that its value was at least $11,500 less than the $50,000 tendered by Neilson's insurer.[1] For that reason, the adjuster concluded that the plaintiff's underinsured motorist coverage was not triggered. The adjuster subsequently called the plaintiff's attorney on two occasions to request additional medical records and left voice messages requesting a response. The plaintiff's attorney did not respond to those communications.

The plaintiff commenced the present action against the defendant on January 12, 2017.[2] Her complaint contained three counts. In count one, the plaintiff alleged

---

[1] As the court noted in its memorandum of decision, the plaintiff "did not challenge this calculation at trial or in [her] posttrial memoranda."

[2] As the court found in its memorandum of decision, "[p]rior to initiation of the lawsuit . . . [the defendant] did not advise the plaintiff of its position

breach of contract, claiming that she was entitled to underinsured motorist benefits from the defendant. In counts two and three, the plaintiff alleged that the defendant had engaged in unfair and deceptive insurance practices in violation of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., respectively.

On April 17, 2017, the defendant filed a motion to bifurcate, in which it sought to stay the litigation as to the CUIPA and CUTPA counts until after count one, the underinsured motorist claim, had been resolved. By order dated June 24, 2017, the court granted that motion. The court subsequently referred count one to an arbitrator pursuant to General Statutes § 52-549u.[3] See generally *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 529, 803 A.2d 311 (2002) (explaining that § 52-549u et seq. established "nonbinding arbitration program" for certain civil actions).

On January 17, 2018, the arbitrator issued a decision in which he found in favor of the plaintiff on her underinsured motorist claim and awarded her $19,500 in damages. When the defendant declined to demand a trial de novo on that claim, the arbitrator's decision became a judgment of the court pursuant to General Statutes (Rev. to 2017) § 52-549z.[4]

regarding her claim or its value. It did not send a customary 'ample coverage' letter and did not make an offer to resolve the plaintiff's claim."

[3] General Statutes § 52-549u provides in relevant part that "the court, in its discretion, may refer to an arbitrator, for proceedings authorized pursuant to this chapter, any civil action in which in the discretion of the court, the reasonable expectation of a judgment is less than fifty thousand dollars exclusive of legal interest and costs and in which a claim for a trial by jury and a certificate of closed pleadings have been filed. . . ."

[4] General Statutes (Rev. to 2017) § 52-549z provides in relevant part: "(a) A decision of the arbitrator shall become a judgment of the court if no appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section. . . .

In June, 2018, the plaintiff served the defendant with postjudgment interrogatories pursuant to General Statutes § 52-351b, seeking discovery on the defendant's assets. On July 12, 2018, the plaintiff filed a motion for an order of compliance, claiming that the defendant had "failed to respond" to those interrogatories. The defendant filed an objection to that motion for compliance, in which it averred that it had raised a timely objection to the interrogatories with the plaintiff "on the ground that no final judgment had issued in the case." On August 16, 2018, the plaintiff filed a second motion for an order of compliance; the defendant filed a notice of compliance with the plaintiff's discovery requests eleven days later. On September 6, 2018, the plaintiff filed a third motion for an order of compliance "regarding the defendant's late objections and failure to fully and fairly answer" her discovery requests, to which the defendant objected. Following a hearing, the court sustained that objection and denied the plaintiff's motion for an order of compliance.

On November 1, 2018, the plaintiff filed an appeal with this court, challenging the propriety of the court's denial of her motion for an order of compliance. In response, the defendant argued that the appeal should be dismissed for lack of subject matter jurisdiction because a final judgment had not yet been rendered on all counts of the plaintiff's complaint. This court agreed with the defendant and, in a decision released on February 11, 2020, concluded that "the [trial] court's ruling was an interlocutory discovery order in an ongoing civil action that is not immediately appealable because it neither terminated a separate and distinct proceeding nor deprived the plaintiff of a presently held statutory or constitutional right that would be irretrievably lost

"(d) An appeal by way of a demand for a trial de novo must be filed with the court clerk within twenty days after the deposit of the arbitrator's decision in the United States mail, as evidenced by the postmark . . . ."

in the absence of immediate appellate review." *Kraus-man* v. *Liberty Mutual Ins. Co.*, 195 Conn. App. 682, 684, 227 A.3d 91 (2020). This court further concluded that, "[b]ecause the appeal was taken prior to the court rendering a final judgment on all counts of the plaintiff's complaint, the appeal is premature and jurisdictionally defective." Id., 695. This court thus dismissed the plaintiff's appeal. Id.

While that appeal was pending, the trial court issued its decision on a motion for summary judgment that the defendant filed on the CUIPA and CUTPA counts of the plaintiff's complaint. The court first concluded that CUIPA does not authorize a private cause of action and, accordingly, rendered summary judgment in favor of the defendant on the second count of the complaint. The court denied the motion for summary judgment with respect to the CUTPA count, concluding that the defendant had not demonstrated that no genuine issues of material fact exist as to whether it had engaged in improper business practices.

The plaintiff filed an amended complaint on November 15, 2021, which is the operative complaint in this case. That complaint included revisions to the CUTPA claim set forth in count three and a fourth count that alleged a breach of the implied covenant of good faith and fair dealing. In response, the defendant filed an answer and several special defenses. In those special defenses, the defendant alleged, inter alia, that it had not paid the $19,500 arbitration award on the first count of the complaint "because such award is not a final, payable judgment." The defendant further alleged that its legal counsel had advised "that [the defendant] should not pay the arbitrator's award until such time as it became a payable judgment of the court," emphasizing that it had articulated that position in its communications with the plaintiff's counsel and its pleadings before the court.

A five day court trial followed, and both parties filed posttrial briefs. In its subsequent memorandum of decision, the court found that the plaintiff had not established a CUIPA violation and, thus, could not prevail on the CUTPA claim set forth in count three of the operative complaint. See *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 317 Conn. 602, 624, 119 A.3d 1139 (2015) ("a plaintiff cannot bring a CUTPA claim alleging an unfair insurance practice unless the practice violates CUIPA"). The court then rejected the breach of good faith and fair dealing claim contained in count four, finding that the defendant had not acted in bad faith.[5]

On May 24, 2023, the plaintiff filed a motion to reargue. The court granted that motion and held a hearing on July 20, 2023. By order dated July 26, 2023, the court made a technical correction to one statement in its memorandum of decision and rejected all other arguments advanced by the plaintiff.[6] This appeal followed.

I

The plaintiff first claims that the court improperly granted the motion to bifurcate and stay discovery filed by the defendant. We disagree.

It is well established that the trial court is vested with discretion to bifurcate a civil trial. "Pursuant to General Statutes § 52-205[7] and Practice Book § 15-1,[8]

---

[5] The court also noted that, "[b]ecause the court has found that the plaintiff has failed to prevail under either count three or count four, it does not address the special defenses pleaded by [the defendant]."

[6] In its order on the plaintiff's motion to reargue, the court noted that it had "incorrectly stated [in its memorandum of decision] that . . . the testimony of one of the lead claim handlers . . . was contained in a deposition transcript that was not admitted in evidence. In fact, [that] evidence . . . came in as evidence at trial."

[7] "General Statutes § 52-205 provides: 'In all cases, whether entered upon the docket as jury cases or court cases, the court may order that one or more of the issues joined be tried before the others.' " *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 449 n.21, 820 A.2d 258 (2003).

[8] "Practice Book § 15-1 [provides]: 'In all cases, whether entered upon the docket as jury cases or court cases, the judicial authority may order that

the trial court may order that one or more issues that are joined be tried before the others. The interests served by bifurcated trials are convenience, negation of prejudice and judicial efficiency. . . . Bifurcation may be appropriate in cases in which litigation of one issue may obviate the need to litigate another issue. . . . The bifurcation of trial proceedings lies solely within the discretion of the trial court." (Citation omitted; footnote altered; footnote in original; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 448–49, 820 A.2d 258 (2003). When a trial court exercises its discretion to bifurcate a civil trial, "appellate review is limited to a determination of whether this discretion has been abused. . . . In reviewing claims that the trial court abused its discretion [in bifurcating certain issues at trial] the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness; the ultimate issue is whether the court could reasonably conclude as it did . . . ." (Citation omitted; internal quotation marks omitted.) *Saczynski* v. *Saczynski*, 109 Conn. App. 426, 428, 951 A.2d 670 (2008).

On our review of the record, we cannot say that the court abused its discretion in the present case. The court reasonably could have determined that bifurcation of the breach of contract claim from the CUTPA and breach of good faith and fair dealing claims served interests of convenience and judicial efficiency and may have negated the need to litigate other issues related to whether the defendant acted in bad faith in handling

---

one or more of the issues joined be tried before the others. [Where the pleadings in an action present issues both of law and of fact, the issues of law must be tried first, unless the judicial authority otherwise directs. If some, but not all, of the issues in a cause are put to the jury, the remaining issue or issues shall be tried first, unless the judicial authority otherwise directs].' " *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 449 n.22, 820 A.2d 258 (2003).

the plaintiff's claim. See, e.g., *Dorfman* v. *Smith*, 342 Conn. 582, 588, 271 A.3d 53 (2022) (trial court bifurcated trial on breach of contract claim regarding underinsured motorist benefits "from the extracontractual claims"); *Hunte* v. *Amica Mutual Ins. Co.*, 68 Conn. App. 534, 536, 792 A.2d 132 (2002) (trial court bifurcated trial on breach of contract claim for underinsured motorist benefits "from the trial of the bad faith and CUTPA and CUIPA claims"); *Falcone* v. *American Commerce Ins. Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-14-6024174-S (September 24, 2015) (61 Conn. L. Rptr. 150, 151) (concluding that bifurcation was in interest of convenience and judicial efficiency and noting that "[r]esolution of the plaintiffs' claim for breach of contract may well be dispositive of their claim for breach of the implied covenant of good faith and fair dealing"). In this case, bifurcation permitted the court to refer the breach of contract count regarding the defendant's liability for underinsured motorist payments to an arbitrator pursuant to § 52-549u. The record indicates that the arbitrator promptly issued his decision five days after the arbitration hearing, as the plaintiff acknowledged in her February 23, 2018 motion for judgment.

In its decision to grant the motion to bifurcate and stay discovery, the court also noted that the resolution of the first count of the operative complaint may obviate the need to litigate another issue. Although the arbitrator ultimately concluded that the defendant was, in fact, liable for $19,500 in underinsured motorist damages, if the arbitrator instead had concluded that Neilson was not underinsured or that the plaintiff had not sustained damages that triggered her underinsured motorist coverage with the defendant, such a conclusion may well have obviated the need to litigate other issues regarding whether the defendant acted in bad faith in handling

her underinsured motorist claim. For all of those reasons, and mindful of our obligation to make every reasonable presumption in favor of the correctness of the court's exercise of its discretion; see *Saczynski* v. *Saczynski*, supra, 109 Conn. App. 428; we conclude that the court did not abuse its discretion in granting the motion to bifurcate and stay discovery filed by the defendant.

II

The plaintiff next claims that the court improperly denied her motion for an order of compliance with her discovery requests. We do not agree.

At the outset, we note that "[t]he granting or denial of a discovery request rests in the sound discretion of the court." *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 57, 459 A.2d 503 (1983). "Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . The action of the trial court is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 386, 107 A.3d 920 (2015).

The following additional facts are relevant to this claim. On January 17, 2018, the arbitrator issued a decision in which he found in favor of the plaintiff on her underinsured motorist claim and awarded her $19,500 in damages. That decision became a judgment of the court pursuant to § 52-549z when the defendant did not demand a trial de novo on that claim. In June, 2018, the plaintiff served the defendant with postjudgment interrogatories pursuant to § 52-351b. It is undisputed

that other counts of the plaintiff's complaint remained pending at that time.

On July 12, 2018, the plaintiff filed a motion for an order of compliance, claiming that the defendant had "failed to respond" to those interrogatories. The defendant filed an objection to that motion for compliance, in which it averred that it had raised a timely objection to the interrogatories "on the ground that no final judgment had issued in the case." Attached as an exhibit to that objection was an email dated July 9, 2018, from the defendant's counsel to the plaintiff's counsel, which states in relevant part: "[The defendant] hereby objects to [the] [p]laintiff's Post-Judgment Remedy Interrogatories. [The defendant] disputes [the plaintiff's] assertion that [a] final judgment has entered in this matter." The defendant also claimed that the plaintiff's postjudgment interrogatories, which sought discovery on the defendant's assets, were "inherently frivolous," as "[t]here is simply no good faith basis for the plaintiff to believe that [the defendant] lacks sufficient assets to pay the arbitrator's award of $19,500 as to count one of the complaint."

On July 27, 2018, the plaintiff filed a reply to the defendant's objection, in which she argued, inter alia, that a final judgment "is not required" for the service of postjudgment interrogatories. On August 8, 2018, the plaintiff filed a request for argument on her motion for an order of compliance, in which she stated that the motion "involves issues of law and statutory interpretation with respect to when a judgment can be collected upon in a bifurcated matter that will likely require further elaboration and inquiry by the court" and that "[t]here exists no case law on point."

On August 16, 2018, the plaintiff filed a second motion for an order of compliance. In that motion, the plaintiff averred that she had consented to a thirty day extension

to her previous discovery request "making [the defendant's] answers . . . due no later than . . . August 15, 2018." Because the defendant had not complied with that deadline, the plaintiff requested, among other things, the entry of a default against the defendant and an award of costs and attorney's fees in her favor. On August 27, 2018, the defendant filed a notice of compliance with the plaintiff's discovery requests. At that time, the defendant filed separate responses to the plaintiff's interrogatories and her request for the production of documents.

On September 6, 2018, the plaintiff filed a third motion for an order of compliance "regarding the defendant's late objections and failure to fully and fairly answer" her discovery requests. One week later, the plaintiff filed another request for argument, stating in relevant part that her motion "involves [an] issue of law as to what costs a party can claim after the entrance of a judgment after an arbitration award in a bifurcated case. This case has a unique procedural history that requires further explanation before the court." On September 28, 2018, the defendant filed an objection to the plaintiff's third motion for an order of compliance, in which it argued that (1) it had furnished the "entire claims file for [the plaintiff's] claim" to the plaintiff; (2) the plaintiff's request for documents "are vague, overbroad, and seek highly confidential and protected materials from innumerable private individuals who are not a party to this lawsuit"; (3) the information sought in certain interrogatories was "contained and identified in the documents" already produced by the defendant; and (4) the defendant "previously objected to the plaintiff's discovery requests and the plaintiff has neither alleged nor shown any prejudice from the allegedly untimely objections."

The court subsequently held a hearing on the plaintiff's motion for an order of compliance with her discovery requests. Following that hearing, the court sustained

the defendant's objections and denied the plaintiff's motion. On appeal, the plaintiff claims that the court abused its discretion in doing so.

The record before us indicates that, although the defendant did not respond to the plaintiff's discovery requests by the August 15, 2018 deadline, it responded to those requests and filed a notice of compliance therewith eleven days later on August 27, 2018. At the hearing on the plaintiff's motion for an order of compliance, the defendant's counsel emphasized that the defendant had objected to the plaintiff's initial discovery request. In response to questions from the trial court, counsel also confirmed that the defendant had filed a notice of compliance and had "produced the entire claims file in this case." The plaintiff has not alleged, before the trial court or this court, that any prejudice resulted from the defendant's eleven day delay in complying with her discovery requests.[9] Furthermore, the primary basis of the defendant's July 26, 2018 objection to the plaintiff's postjudgment interrogatories was that "there is no final judgment in this case," a proposition that this court ultimately concluded was correct. See *Krausman* v. *Liberty Mutual Ins. Co.*, supra, 195 Conn. App. 695. In light of the foregoing, we cannot conclude that the trial court abused its discretion in denying the plaintiff's motion for an order of compliance and sustaining the defendant's objection thereto.[10]

---

[9] When the defendant filed its notice of compliance with the plaintiff's discovery requests, the pleadings had not closed and more than seven months remained until the discovery deadline ordered by the court.

[10] In her principal appellate brief, the plaintiff notes that, pursuant to Practice Book § 13-14, the court is authorized to enter "(1) [a]n order of compliance; (2) [t]he award to the discovering party of the costs of the motion, including a reasonable attorney's fee; (3) [t]he entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; (4) [t]he entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence; (5) [a]n order of dismissal, nonsuit or default." She then contends that "[n]one of the aforementioned relief permit-

Moreover, to the extent that the plaintiff contends that the court improperly limited the scope of discovery in ruling on her motion for an order of compliance, we disagree. At the hearing on that motion, the defendant's counsel maintained that the plaintiff sought the complete files of unidentified third parties who had made claims for underinsured motorist benefits against the defendant, which were protected from disclosure under the Connecticut Insurance Information and Privacy Protection Act, General Statutes § 38a-975 et seq.[11] As counsel stated, the plaintiff requested "the entire claims file of every single underinsured, uninsured motorist vehicle claim that's been made against [the defendant] . . . ." Noting that the plaintiff had baldly alleged that the defendant had engaged in a general business practice but had not alleged any specific facts to substantiate

---

ted the [court] to completely ignore [her] August 16, 2018 motion for [an] order of compliance and allow the defendant's late filed objections."

The plaintiff misunderstands that rule of practice. As this court has explained, Practice Book § 13-14 "provides sanctions for failure to answer interrogatories, which the court may order upon motion as the ends of justice require. These orders may vary in severity from entry of a nonsuit or default or judgment of dismissal to an award of costs of the motion, including a reasonable attorney's fee. . . . Decisions on the entry of such sanctions rest within the sound discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Magana* v. *Wells Fargo Bank, N.A.*, 164 Conn. App. 729, 733, 138 A.3d 966 (2016). Section 13-14 thus authorizes, but does not require, the court to impose any sanction outlined therein.

[11] In her interrogatories, the plaintiff sought discovery on not only the handling of her claim, but those of unidentified third parties. More specifically, she requested the following from the defendant:

"Your complete file with respect to any and all claims in Connecticut meeting the following criteria:

"a. In which a lawsuit was initiated by an insured of [the defendant] against [the defendant].

"b. In which the underlying tortfeasor's claim settled prior to litigation being commenced.

"c. In which a demand was made by an insured of [the defendant] to [the defendant] prior to the initiation of a lawsuit against [the defendant].

"d. In which the accident occurred from January 1, 2010, to the present.

"The names and claim numbers for all of the claimants from January,

that claim, the defendant's counsel argued that her discovery request was overbroad and improper. See *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 681, 804 A.2d 823 (2002) ("Discovery is confined to facts material to the plaintiff's cause of action and does not afford an open invitation to delve into the defendant's affairs. . . . A plaintiff must be able to demonstrate good faith as well as probable cause that the information sought is both material and necessary to his action. . . . A plaintiff should describe with such details as may be reasonably available the material he seeks . . . and should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to [his] case." (Internal quotation marks omitted.)); *Quimby* v. *Kimberly Clark Corp.*, 28 Conn. App. 660, 672, 613 A.2d 838 (1992) ("[F]or a plaintiff to allege CUIPA and CUTPA violations successfully the plaintiff must allege more than a singular failure to settle a plaintiff's claim fairly. The plaintiff must allege that the defendant has committed the alleged wrongful acts with such frequency as to indicate a general business practice. . . . [The plaintiff] makes no allegations that the defendant has similarly failed to settle similar claims presented by other claimants . . . .").

In its order on the defendant's objection to the plaintiff's motion, the court stated: "Based upon the arguments and representations of counsel for the defendant, the defendant's objection to the plaintiff's motion and request for discovery is sustained."[12] On our review

---

2013, through the present wherein [the defendant] took the same position in processing those claims as it did with the claim that is subject to this lawsuit."

[12] We note that the court granted a motion for reargument on that ruling. On May 13, 2019, the plaintiff filed a request to have that reargument adjudicated. The plaintiff thereafter filed a motion for reassignment of the outstanding discovery disputes pursuant to Practice Book § 11-19 (b). The court granted that motion and ordered as follows: "The case is reassigned to Judge Krumeich. The parties must reclaim the subject motion [to adjudicate the pending discovery motions]." The plaintiff did not subsequently reclaim her motion at any time.

of the record, we conclude that the plaintiff has not demonstrated that the court abused its discretion in that regard.[13]

### III

The plaintiff claims that the court improperly rendered judgment in favor of the defendant on counts three and four of the operative complaint, which alleged a CUTPA violation and a breach of the implied covenant of good faith and fair dealing. She contends that the court erred with respect to three factual determinations. The plaintiff further claims that the court's legal determinations, which were predicated on the factual findings set forth in its memorandum of decision, were improper. We decline to reach the merits of all but one of these claims because the plaintiff has failed to furnish this court with an adequate record for review.

### A

Challenges to the factual determinations of the trial court require us to review the entirety of the record before the court. It is axiomatic that "[a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record." (Internal quotation marks omitted.) *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 436, 845 A.2d 382 (2004). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing

---

[13] Days after the court denied her motion for an order of compliance and sustained the defendant's objection thereto, the plaintiff filed a request to file an amended complaint, which the court granted. In her October 9, 2018 amended complaint, the plaintiff alleged in relevant part that the defendant "has engaged in a similar manner as to demonstrate a general business practice that is in violation of [CUTPA], including but not limited to, the foregoing underinsured/uninsured motorist claims" and then specified five civil actions against the defendant and their corresponding docket numbers. Her operative complaint filed on November 15, 2021, similarly specifies eight such civil actions with particularity.

court *on the entire evidence* is left with the definite and firm conviction that a mistake has been committed." (Emphasis added; internal quotation marks omitted.) *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 464, 165 A.3d 1124 (2017). "Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for [an appellate] court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *MJM Landscaping, Inc.* v. *Lorant*, supra, 437; accord *Stutz* v. *Shepard*, 279 Conn. 115, 126, 901 A.2d 33 (2006) ("in light of the demanding 'clearly erroneous' standard . . . the resolution of each of the plaintiff's claims requires an examination of the entire record").

"A determination regarding whether the court's finding was clearly erroneous requires that we review all of the evidence presented to the trial court, including the testimony of the witnesses. Thus, the transcript of the trial is necessary on appeal in order to properly evaluate whether the evidence presented to the trial court supports the court's [factual findings]." *J. M.* v. *E. M.*, 216 Conn. App. 814, 821, 286 A.3d 929 (2022); see also *Harrigan* v. *Fidelity National Title Ins. Co.*, 214 Conn. App. 787, 803 n.6, 282 A.3d 495 (appellant bears "burden to provide this court with adequate record on which to decide issues on appeal, which includes necessary transcripts"), cert. denied, 345 Conn. 964, 285 A.3d 388 (2022).

This court "does not presume error on the part of the trial court; error must be demonstrated by an appellant on the basis of an adequate record." (Internal quotation marks omitted.) *Lucarelli* v. *Freedom of Information Commission*, 136 Conn. App. 405, 410, 46 A.3d

937, cert. denied, 307 Conn. 907, 53 A.3d 222 (2012). "[An appellant] has the burden of providing this court with a record from which this court can review any alleged claims of error. . . . Practice Book § 61-10 (a) provides: It is the responsibility of the appellant to provide an adequate record for review. . . . The general purpose of [the relevant] rules of practice . . . [requiring the appellant to provide a sufficient record] is to ensure that there is a trial court record that is adequate for an informed appellate review of the various claims presented by the parties. . . . It is not an appropriate function of this court, when presented with an inadequate record, to speculate as to the reasoning of the trial court or to presume error from a silent record." (Citations omitted; internal quotation marks omitted.) *J. M.* v. *E. M.*, supra, 216 Conn. App. 821–22.

The trial in the present case took place over the course of five days on March 15, 16, 17 and 30, and July 19, 2022. The plaintiff neither ordered nor filed transcripts of those proceedings in accordance with Practice Book § 63-8. In its memorandum of decision, the trial court enumerated fifty-four detailed findings of fact with respect to the third count of the plaintiff's complaint and made additional findings regarding the fourth count alleging breach of the implied covenant of good faith and fair dealing. Those findings are the predicate to the court's legal conclusions on those counts.

In the appendix to her principal appellate brief, the plaintiff provided excerpts from the testimony of one witness at trial—Dierdre Botelho, a claims handler with the defendant.[14] Those self-selected excerpts do not provide this court with a complete record to evaluate

---

[14] In its memorandum of decision, the court found that the plaintiff presented the testimony of four individuals at trial and that the defendant presented the testimony of Botelho and the deposition testimony of Karianne Mendez, a claims adjuster with the defendant.

the factual findings made by the trial court. As this court recently observed, "[i]n connection with a claim that requires this court to review the evidence presented at trial, we do not merely rely on an appellant's characterization of the evidence or review only the portions of the evidence on which it relies. Instead, we must consider the evidence as a whole, including evidence of a testimonial nature. In the absence of a complete transcript, we would have to resort to speculation to resolve [the appellant's challenge to the factual findings of the trial court]." *Meineke Bristol, LLC* v. *Premier Auto, LLC*, 227 Conn. App. 64, 74–75, 319 A.3d 826 (2024); see also *J. C.-S.* v. *J. G.*, 230 Conn. App. 651, 654, 331 A.3d 175 (declining to review merits of claims because appellant "has not provided this court . . . with a complete transcript of the hearing, opting instead to provide only self-selected excerpts"), cert. denied, 351 Conn. 924, 333 A.3d 795 (2025); *American Tax Funding, LLC* v. *First Eagle Corp.*, 196 Conn. App. 298, 309, 229 A.3d 1218 (concluding that appellant "has not met its burden of providing an adequate record for review" of challenge to court's factual findings because "it has not provided us with transcripts"), cert. denied, 335 Conn. 942, 237 A.3d 729 (2020); *R & P Realty Co.* v. *Peerless Indemnity Ins. Co.*, 193 Conn. App. 374, 380, 219 A.3d 429 (2019) ("[i]n the absence of transcripts *of the entire trial*, we cannot evaluate the plaintiffs' arguments in support of their appellate claim without resorting to speculation" (emphasis added)); *Stanley* v. *Commissioner of Correction*, 164 Conn. App. 244, 255 n.7, 134 A.3d 253 (concluding that record "plainly is inadequate to review" claim of factual error because "the petitioner has not filed any transcripts from his criminal trial"), cert. denied, 321 Conn. 913, 136 A.3d 1274 (2016); *Crelan* v. *Crelan*, 124 Conn. App. 567, 571, 5 A.3d 572 (2010) ("[T]he record is inadequate for review because we have not been provided with a transcript

of the trial. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.)); *Calo-Turner* v. *Turner*, 83 Conn. App. 53, 56–57, 847 A.2d 1085 (2004) (declining to review challenge to factual determination because appellant failed to provide "a complete transcript of the trial proceedings"). The plaintiff's failure to provide this court with an adequate record precludes meaningful review of her challenge to the court's factual determinations.

Moreover, the particular nature of the plaintiff's claims of factual error presents an additional impediment to our review. On appeal, the plaintiff claims that the court erroneously (1) "failed to find that the defendant admitted that the value of [her] claim increased because a lawsuit was initiated," (2) "failed to find the fact that when the defendant evaluated [her] claim in November, 2017, it had the same information available to it in November, 2016," and (3) "failed to find facts relative to the defendant's own claim handling guidelines." The plaintiff nevertheless did not file a motion for articulation with the trial court or a motion for review with this court, as permitted by Practice Book §§ 60-5 and 60-7.

As our Supreme Court has explained, "[i]t is axiomatic that [a]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the petitioner's claims] would be entirely speculative." (Citation omitted; internal quotation marks omitted.) *Dickinson* v. *Mullaney*, 284 Conn. 673, 681, 937 A.2d 667 (2007). "Where an appellant claims that a trial court failed to make a necessary ruling, [i]t is the responsibility of the

appellant to provide an adequate record for review." (Internal quotation marks omitted.) *Silver* v. *Statewide Grievance Committee*, 42 Conn. App. 229, 234, 679 A.2d 392 (1996), appeal dismissed, 242 Conn. 186, 699 A.2d 151 (1997). For that reason, when an appellant has not provided this court with an adequate record for review, "we assume that the trial court acted properly." Id., 235. Accordingly, the plaintiff's failure to secure an articulation from the trial court as to the factual findings that it allegedly failed to make further impedes our ability to meaningfully review those claims.

B

The lack of an adequate record to review the factual findings of the trial court also precludes our review of all but one of the plaintiff's challenges to the court's legal determinations. The court's conclusions that the plaintiff failed to prove a violation of General Statutes § 38a-816 (6) (D), (F) or (G), and that she failed to prove that the defendant violated the implied covenant of good faith and fair dealing claim are intertwined with, and predicated upon, detailed findings of fact set forth in the court's memorandum of decision. Our conclusion that the record is inadequate to review the propriety of those factual findings prevents us from reviewing those claims of legal error.

The record is adequate to review the plaintiff's claim that the court improperly shifted the burden to the plaintiff on the defendant's advice of counsel defense. Our review of that question of law is plenary. See *Hartford* v. *CBV Parking Hartford, LLC*, 330 Conn. 200, 214, 192 A.3d 406 (2018) (whether trial court applied proper legal standard is subject to plenary review on appeal).

Although the defendant asserted advice of counsel as a special defense, the record indicates that the court did not decide whether that special defense applied in the present case. In its memorandum of decision, the

court specifically stated: "Because the court has found that the plaintiff has failed to prevail under either count three or count four, it does not address the special defenses pleaded by the defendant."

In civil actions like the present one, "[t]he general burden of proof . . . is on the plaintiff, who must prove all the essential allegations of the complaint." (Internal quotation marks omitted.) *Success, Inc.* v. *Curcio,* 160 Conn. App. 153, 179, 124 A.3d 563, cert. denied, 319 Conn. 952, 125 A.3d 531 (2015). To determine whether the plaintiff met her burden of establishing that the defendant failed to act in good faith pursuant to § 38a-816 (6) (F) or that it acted in bad faith in violation of the implied covenant of good faith and fair dealing, the court necessarily considered all of the testimonial and documentary evidence adduced at trial, including evidence that the defendant's claim handlers had been advised by its legal counsel that a final judgment was lacking despite the fact that the arbitrator's award on count one became a judgment of the court in 2018. In light of that evidence and the related findings of fact set forth in the court's memorandum of decision,[15] the court reasonably could conclude that the plaintiff did

---

[15] Among other things, the court found that the defendant "never disclaimed coverage with respect to the plaintiff's claim for underinsured motorist coverage," that the defendant's claim handler called the plaintiff's attorney on two occasions in December, 2016, to request additional medical records and left voice messages requesting a response, but the plaintiff's attorney did not respond to those communications, that the plaintiff took more than four months to respond to the defendant's discovery requests, that the defendant believed a final judgment was lacking in 2018, despite the arbitrator's award, that "the Appellate Court [subsequently] confirmed that the judgment [on the arbitrator's award] was not a final judgment," and that the increase in the defendant's valuation of the plaintiff's underinsured motorist claim following the commencement of this action was attributable to both the fact that the plaintiff "was continuing to treat, and the defendant continued to receive medical bills after commencement of the litigation" and the fact that the defendant "received an assessment of permanence for the plaintiff's injuries" in the fall of 2017.

not satisfy her burden of demonstrating that the defendant had acted in bad faith. Accordingly, we conclude that the court did not apply an improper legal standard in ruling on counts three and four of the operative complaint.

The judgment is affirmed.

In this opinion the other judges concurred.